USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 06 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY CAUDLE

           Plaintiff,

v.

MADISON GLOBAL GROUP and
NEAL MCCABE,

           Defendants.

11-cv-8727 (AJN)

ORDER

---

ALISON J. NATHAN, District Judge:

I.   INTRODUCTION

Plaintiff, Anthony Caudle, brings this action against his former employers Madison Global Group ("Madison") and Neal McCabe ("McCabe") (collectively, "Defendants") alleging breach of contract, fraud, violation of New York State labor laws and violation of the Fair Labor Standards Act. (Cmplt. 5-10). Defendants move to dismiss Plaintiff's breach of contract and fraud claims pursuant to Fed.R.Civ.P. 12(b)(6). (Mot. 7-8). Plaintiff opposes Defendants' motion except that Plaintiff clarifies that he does not assert his breach of contract claim against McCabe in his individual capacity. (Opp. 3, n.1). Oral argument on Defendants' motion was held on May 4, 2012. For the reasons stated herein, Defendants' motion to dismiss is DENIED in part and GRANTED in part.

II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a

1

motion to dismiss, the Court must accept as true all facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition to allegations of the complaint itself, the Court may consider documents attached to the complaint as exhibits and documents incorporated by reference in the complaint. *Halebian v. Berv*, 644 F.3d 122, 131, n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008). The following facts are drawn from the Complaint.

III. FACTUAL BACKGROUND

Madison is a financial services firm founded in or around 2009 by McCabe. (Cmplt. ¶ 8). In February 2011, Defendants recruited Plaintiff to work at Madison. (Cmplt. ¶ 9). At the time he was recruited by Defendants, Plaintiff was employed as an investment banker at Comerica Securities in Detroit, Michigan where he earned approximately $1,000,000 per year. (Cmplt. ¶¶ 9, 12).

In February 2011, during his recruitment by Defendants, Plaintiff asked McCabe whether Madison was sufficiently funded to pay Plaintiff a salary competitive with what he was earning at Comerica. (Cmplt. ¶ 10). McCabe told Plaintiff that Madison had sufficient funding and further stated that none of his companies, including Madison, had ever missed payroll. *Id.*

Based on McCabe's representations, Plaintiff left his employment at Comerica and commenced employment with Madison. (Cmplt. ¶ 12). On or around February 10, 2011, Plaintiff and Defendants signed a term sheet setting forth the terms of Plaintiff's employment with Madison. (Cmplt. ¶ 13). The term sheet indicated a base salary of $750,000 per year, with $325,000 to be paid in cash and the remainder to accrue and be payable when Madison was fully funded. (Cmplt. ¶15). The term sheet also provided that Plaintiff would receive bonuses "based

on corporate milestones and performance." (Cmplt. ¶ 16). McCabe orally represented to Plaintiff that said bonus would range from $1,000,000 to $2,000,000. (Cmplt. ¶ 16).

Plaintiff commenced employment with Madison on or about April 18, 2011. (Cmplt. ¶ 17). Plaintiff was never paid any compensation whatsoever during his employment with Defendants. (Complt. ¶ 19). Plaintiff repeatedly objected to Defendants' failure to pay Plaintiff any compensation, and Defendants repeatedly acknowledged this failure without remedying it. (Complt. ¶¶ 20, 21). On September 2, 2011, in reply to another demand for payment by Plaintiff, Defendants notified Plaintiff that his employment was terminated effective August 31, 2011. (Complt. ¶22).

IV.  ANALYSIS

   A.  Breach of Contract

Plaintiff's breach of contract claim has both a salary and a bonus component. More specifically, Plaintiff alleges that, in violation of the written term sheet, Defendants failed to pay him any of the salary he earned during the period of his employment. (Complt. ¶ 24-28). Plaintiff further alleges that in violation of McCabe's oral promise to Plaintiff, Defendants failed to pay him a minimum bonus of $1 million. *Id.* Defendants move to dismiss each of these aspects of Plaintiff's breach of contract claim.[1]

    1.  *Salary-Based Breach of Contract Claim*

Defendants argue that Plaintiff is barred, as a matter of law, from bringing a breach of contract claim because he was an at-will employee and because the language of the term sheet evinces a clear intent on the part of Defendants not to be bound thereby. For the following

---

[1] Defendants also move to dismiss the breach of contact claim, in its entirety, as against McCabe as an individual. (Mot. 16). Plaintiff, in his Opposition, clarified that that he does not assert his breach of contract claim against McCabe in his individual capacity. (Opp. 3, n.1).

reasons both arguments are rejected, and Defendants' motion to dismiss Plaintiff's salary-based breach of contract claim is DENIED.

        a) *Plaintiff's Status As An At-Will Employee*

"Under New York law, an employer's virtually unfettered power to terminate an at-will employee does not negate its duty to abide by promises made prior to termination." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Rather, "[t]he hallmark of an employment-at-will relationship is that the employer is free to modify the terms of the employee's employment, subject only to [the employee's] right to leave his employment if he f[inds] the new terms unacceptable." *Intern'tl Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997) (quoting *Bottini v. Lewis & Judge Co.*, 621 N.Y.S.2d 753, 754 (App. Div. 3d Dep't 1995)). Thus, an employer's power to unilaterally change the terms of employment is limited to prospective changes such that the employee can actually choose whether or not to continue employment under the modified terms. *See Gebhardt v. Time Warner Entertainment-Advance/Newhouse*, 726 N.Y.S.2d 534, 535 (App. Div. 4th Dep't. 2001) (in at-will employment relationship, the employer is "entitled to change the terms of the employment agreement only prospectively, subject to plaintiff's right to leave the employment if the new terms [are] unacceptable"). Nothing about this power to make prospective changes to an employee's terms of employment or to discharge an employee insulates an employer from abiding by the terms of his agreement with his employee for so long as that agreement is in effect. *See Dreyfuss v. Etelecare Global Solutions-US, Inc.*, 2010 WL 4058143, *4 (S.D.N.Y. Sept. 30, 2010) ("[A]n employer may terminate an at-will employee, but he cannot retroactively change the terms of the employment agreement he entered into with that employee.").

Indeed, "at-will employment contracts usually are unilateral contracts. The employer makes an offer or a promise which the employee accepts through performance. The employee's action in reliance upon the employer's promise is sufficient consideration to make the employer's promise binding." 1 Mark A. Rothstein et al, Employment Law § 1.28 (4th ed. 2012). Thus, "[p]erformance rendered by an at-will employee, before any notice of revocation, creates a unilateral contract binding the employer to pay the specified wage and to perform all other promises that he may have made in the agreement." *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003) (citing 1 Joseph M. Perillo, Corbin on Contracts, § 4.2, at 566 n. 44 (rev'd ed. 1995)). *See also Levy v. Lucent Tech., Inc.*, 2003 WL 118500, *9 (S.D.N.Y. Jan. 14, 2003) ("In an at-will employment, the employer is bound to pay for services rendered by the employee at the rate fixed by the employer's promise."); *Baguer v. Spanish Broad. Sys., Inc.*, 2007 WL 2780390, *11 (S.D.N.Y. Sept. 20, 2007) (holding that an employee's claim for commissions owed at the time of termination was "entirely compatible with at-will employment, just as a salaried at-will employee who is fired before being paid may be compensated for the work done since his last paycheck.") For these reasons, an employee's at-will employment status does not bar him from bringing a breach of contract claim against his employer if his employer has failed to compensate him for services rendered.

None of the cases cited by Defendants disturbs this conclusion. Indeed, most of the cases relied upon by Defendants involved questions of *termination* of at-will employees, not *compensation* for work already performed. (Mot. 10-11) (citing *Hunter v. Kaufman Enters. Inc.*, 2011 U.S. Dist. LEXIS 89331 (E.D.N.Y. Aug. 8, 2011); *Benson v. North Shore Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320 (E.D.N.Y. 2007); *Cucchi v. NYC Off Track Betting Corp.*, 818 F. Supp 647 (S.D.N.Y. 1993)). Moreover, the New York state case to which the

court in *Cucchi* cites, *Dickstein v. Del Laboratories, Inc.*, 145 A.D.2d 408 (App. Div. 2d Dep't 1988), simply held that in the at-will employment context, the court would not imply any obligation that would interfere with the employer's right to discharge its employee. None of these cases instructs as to Plaintiff's compensation-based claim.

Equally uninstructive is *Abdullajeva v. Club Quarters, Inc.*, 1996 U.S. Dist. LEXIS 12805 (S.D.N.Y. Sept. 3, 1996), in which the court dismissed the plaintiff's breach of contract claim because it centered on the defendant's prospective modification of the plaintiff's wage. This case is inapposite because Plaintiff is not challenging a prospective alteration of his salary; rather, he is challenging Defendants' failure to pay him for the work he performed during the period of his employment.

Finally, *Kempf v. Mitsui Plastics, Inc.*, 1996 U.S. Dist LEXIS 17240 (S.D.N.Y. Nov. 20, 1996) actually undermines Defendants' argument. In *Kempf*, the court dismissed the plaintiff's termination-based breach of contract claim but allowed to go forward the aspect of her breach of contract claim that was based on non-payment of compensation. 1996 U.S. Dist LEXIS 17240, *20-22. Thus, none of the cases cited by Defendants support their argument that an at-will employment relationship bars an employee from bringing a breach of contract claim based on the employer's failure to pay for services performed.

Because an employee's at-will status does not relieve an employer of its obligation to pay the agreed upon wage for services actually rendered, Plaintiff's salary-based breach of contract claim can coexist alongside his status as an at-will employee. Plaintiff alleges that, pursuant to the term sheet, Defendants agreed to pay Plaintiff a salary of $750,000 per year, which would be received as $325,000 in cash with the balance paid as directed by McCabe and his co-chairman. (Daub Decl. Ex. B). Plaintiff further alleges that he performed services for Defendants from

April 18, 2011 to September 2, 2011, and that Defendants failed to pay him any compensation at all for these services. (Complt. ¶¶ 17, 22, 25). Because Plaintiff does not challenge either his termination or any prospective changes to his compensation, his breach of contract claim is not barred by his status as an at-will employee, and Defendants' argument to the contrary is rejected.

        b) *The Language of the Term Sheet*

Defendants further argue that Plaintiff's breach of contract claim fails as a matter of law because the language of the term sheet clearly expresses Defendants' intent not to be bound by any of the terms contained therein. (Tr. 6:16-18). However, the cited language of the term sheet is not sufficiently unambiguous to allow the Court, as a matter of law, to find that there was an express reservation of the right not to be bound by any of the provisions in the term sheet.

"Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). At oral argument, Defendants argued that the following language contained under the "At-Will Employment" heading of the term sheet unambiguously indicated Defendants' intent not to be bound by *any* of the provisions of the term sheet:

> Madison Global Group, LLC remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement. No one, except the CEO has the authority to make a promise, agreement or contract about your employment, benefits or anything related to your employment.

(Tr. 6:5-9, 7:16-20). Defendants contend that because this language reserved their right to change wages and because the term sheet is not a writing signed by the CEO, the term sheet is not a binding contract. (Tr. 7:20-25, 10:4-10). The Court rejects each of these arguments.

First, Defendants' argument that the language empowering them to change wages

7

empowered them not to pay Plaintiff at all, (Tr. 9:1-7), cannot stand in light of the Court's holding that Plaintiff's at-will status does not bar him from bringing a salary-based breach of contract claim.

Second, the sentence limiting contracting authority to the CEO is certainly susceptible to a meaning other than that proposed by Defendants. The sentence, contained within the provision relating to Plaintiff's at-will status, can be understood as memorializing Defendants' authority to prospectively alter the conditions of Plaintiff's employment given his at-will status. Under such a reading, this language did not render the term sheet non-binding from the outset. Rather, Defendants were bound by the terms outlined in the term sheet for so long as the terms were in effect, but Defendants were also empowered to prospectively change any and all such terms. Indeed, such a reading is consistent with the very nature of at-will employment. Because there is an alternate, reasonable reading of this contracting authority language, the Court rejects Defendants' argument that the language unambiguously evinces an intent not to be bound by the terms in the term sheet.

Finally, even if the Court were to agree that this sentence renders the term sheet unenforceable unless signed by the CEO, there is a question of fact as to whether or not the term sheet was in fact signed by the CEO.[2] That question cannot be resolved at the motion to dismiss stage. For the forgoing reasons, Defendants' motion to dismiss Plaintiff's salary-based breach of contract claim is DENIED.

---

[2] The term sheet is signed by McCabe, Ernest G. Green and Caudle. (Daub Decl. Ex. B). Defendants stated at oral argument that the term sheet was not signed by the CEO, and Plaintiff stated that it was. (Tr. 7:24-25, 20:1, 28:12-13).

2. *Bonus-Based Breach of Contract Claim*

Plaintiff alleges that McCabe promised him a minimum bonus of $1 million, which Defendants failed to pay Plaintiff in breach of said promise. (Complt. ¶¶ 16, 27, 28; Opp. 7). Defendants move to dismiss Plaintiff's bonus-based breach of contract claim arguing that any alleged promises by McCabe are unenforceable because the written term sheet rendered bonus payments discretionary. (Mot. 12-13). The Court finds that the bonus provision of the term sheet is not sufficiently unambiguous to render McCabe's alleged promise unenforceable, and Defendants' argument to the contrary is rejected.

Under New York law, "a written discretionary bonus policy bars an action for an alleged oral bonus promise." *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 338 (S.D.N.Y. 2011) (citing *Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 671 (App. Div. 1st Dep't 2008); *Smalley v. Dreyfus Corp.*, 832 N.Y.S.2d 157, 162 (App. Div. 1st Dep't 2007); *Kaplan v. Capital Co. of Am.*, 747 N.Y.S.2d 504, 505 (App. Div. 1st Dep't 2002)). This rule derives from the general principle of contract law that where the terms of the contract are unambiguous, the plaintiff is barred from relying on parol evidence. *See Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753 (1989). Thus, in order for Plaintiff to be barred, as a matter of law, from basing his claim on McCabe's alleged oral promise, the term sheet must be sufficiently unambiguous as to the discretionary nature of bonuses.

The Second Circuit has held that "[d]iscretion to modify or cancel an incentive . . . will not be implied if there exists no explicit contractual provisions assigning the employer absolute discretion to pay such compensation." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653-54 (2d Cir. 2011). Indeed, in each of the cases cited by Defendants, the contract provisions at issue explicitly stated that the payment of incentive compensation was discretionary. (Mot. 12). *See Ferrari v.*

*Keybank Nat'l Assoc.*, 2009 US Dist LEXIS 160, *6-8 (W.D.N.Y. Jan. 5, 2009) (incentive plan explicitly stated, *inter alia*, that "KeyCorp retains the absolute and unconditional right at all times . . . to increase, decrease or terminate any, and all incentive awards" and that "KeyCorp may, in its sole and absolute discretion . . . modify Participant's performance objectives [and/or] modify applicable Plan incentive goals . . . . Such modifications may be made on a retroactive basis."); *Kaplan*, 747 N.Y.S.2d at 505 (remarking that "the bonus compensation sought was clearly stated in the company handbook to be purely discretionary"); *Foss v. Am. Tel. and Tel. Co.*, 605 N.Y.S.2d 143, 144 (App. Div. 3d Dep't 1993) (remarking that "[t]he disclaimer explicitly reserves to AT&T the right to 'reduce, modify, or withhold compensation or noncash awards based on management determination of special circumstances at any time for any reason with or without prior notice'."); *Brennan v. JP Moran Sec., Inc.*, 2004 NY Misc. LEXIS 3066, *7-*8 (N.Y. Sup. Ct. Aug. 31, 2004) (noting that the bonus plan explicitly stated "individual awards are discretionary" and "[p]ayment of all monies in a bonus pool to participants in the pool is not mandatory. No employee should interpret this Plan as granting individual rights.").

By contrast, the bonus provision of the term sheet states: "Bonus: Based on corporate milestones and performance." (Daub Decl. Ex. B). Unlike the cases cited by Defendants, there is no language expressly addressing the discretionary nature of bonuses. *See also Namad*, 74 N.Y.2d at 752-53 (contract provision stating that "[t]he amounts of other compensation and entitlements, if any, including regular bonuses, special bonuses and stock awards, shall be *at the discretion of the management*" was unambiguously discretionary) (emphasis added). Thus, this provision of the term sheet cannot be described as an "explicit contractual provisio[n] assigning the employer absolute discretion." Because the bonus provision of the term sheet is not sufficiently unambiguous as to the discretionary nature of bonuses, Plaintiff is not barred from

relying on McCabe's alleged promise, and Defendants' motion to dismiss Plaintiff's bonus-based breach of contract claim is DENIED.

B. <u>Fraud</u>

To state a claim for fraudulent inducement, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996).

Plaintiff claims that Defendants fraudulently induced him to leave his employment at Comerica by falsely representing to him that Madison had sufficient funds to compensate him and that McCabe's companies had never missed payroll. (Cmplt. ¶¶ 59-62). Plaintiff alleges that as a result of these false statements, he suffered damages in the amount of income lost by leaving Comerica. (Cmplt. ¶62).

Defendants move to dismiss Plaintiff's fraud claim on three grounds: first, that it is impermissibly duplicative of Plaintiff's breach of contract claim; second, that Plaintiff cannot plead reasonable reliance; and third, that it is insufficiently pled under Fed.R.Civ.P. 9(b). Because the Court agrees that Plaintiff's fraud claim is duplicative of his breach of contract claim, it does not address Defendants' second and third arguments.

1. *Duplicativeness*

Under New York law, a breach of contract claim and a fraud claim cannot both lie if the fraud claim is premised on the defendant's allegedly false statements indicating his intent to perform under the contract. *Bridgestone*, 98 F.3d at 19-20. However, there are three notable exceptions to this general rule: (i) if the plaintiff demonstrates a legal duty separate from the duty

to perform under the contract; or (ii) if the plaintiff demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) if the plaintiff seeks special damages that are caused by misrepresentation and unrecoverable as contract damages. *Id.* at 20.

Plaintiff asserts that his fraud claim may be pled alongside his breach of contract claim under the second and third *Bridgestone* exceptions. That is, Plaintiff urges the Court to allow his fraud claim to proceed on that grounds that it involves a collateral misrepresentation, (Opp. 8-10; Tr. 25:14-18), and that it seeks damages that may not be recoverable under his breach of contract claim, (Tr. 27:11-12). For the following reasons, the Court rejects both of Plaintiff's arguments and GRANTS Defendants' motion to dismiss Plaintiff's fraud claim.

    a. *Collateral Representation*

The alleged misrepresentations that form the basis of Plaintiff's fraud claim are McCabe's alleged statements regarding Madison's ability to pay Plaintiff's salary and the track record of McCabe's companies in meeting payroll. (Complt. ¶¶ 10, 59). An employer's statement about its ability to pay a potential employee's salary or its history of compensating employees is not collateral to a contractual agreement to pay the potential employee his agreed upon remuneration. Implicit in any promise to pay employee remuneration is a promise that the employer has the funds to keep that promise. Put another way, "where a party obligates itself to a payment of money, a representation concerning that party's ability to pay is indivisible from the contract." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 332 (S.D.N.Y. 2005). Thus, McCabe's alleged misrepresentations regarding Madison's finances and its history of meeting payroll are not collateral to Plaintiff's claim that Defendants breached the parties' contract by failing to pay Plaintiff his earned compensation.

12

The cases cited by Plaintiff, (Opp. 9), do not dictate a different conclusion. In each of these cases, the court held that statements about present facts are distinguishable from promises about future action (*i.e.*, contractual promises) and are therefore actionable as fraud. *See, Stewart v. Jackson & Nash*, 976 F.2d 86, 89-90 (2d Cir. 1992); *Rodgers v. Blacksmith Brands, Inc.*, 2011 WL 6293764, *4 (S.D.N.Y. Dec. 13, 2011); *Hyman v. Int'l Bus. Mach. Corp.*, 2000 WL 1538161, *2-4 (S.D.N.Y. Oct. 17, 2000); *Doehla v. Wathne Ltd.*, 2000 U.S. Dist. LEXIS 9913, *16 (S.D.N.Y. Jul. 14, 2000). However, none of these cases dealt with statements about present facts that directly overlapped with the contractual provision allegedly breached. *Stewart*, 976 F.2d at 87-88 (no breach of contract claim alleged; plaintiff brought fraudulent inducement claim, which defendant attempted to construe as breach of contract claim); *Rodgers*, 2011 WL 6293764. *3 (breach of contract claim was brought against different defendant than fraud claim and was based on failure to pay severance, which had no relation to fraud claim); *Hyman*, 2000 WL 1538161, *4 (misrepresentations that formed bases of fraud claim were "separate and apart from Plaintiffs' offers of employment or the terms of the offers."); *Doehla v. Wathne Ltd.*, 1999 U.S. Dist. LEXIS 11787, *10 (S.D.N.Y. Aug. 3, 1999) (breach of contract claim was based on the plaintiff's termination whereas fraud claim was based on statements regarding financial health of defendant corporation).[3]

---

[3] In addition to one Second Circuit case and three cases from this District, each of which the Court addresses in the body of this Decision, Plaintiff also cites *Freedman v. Pearlman*, 706 N.Y.S.2d 405 (App. Div. 1st Dep't 2000). In *Freedman*, the plaintiff brought a breach of contract claim alleging that he was entitled to certain profit sharing under his contract and a fraud claim alleging that the defendant fraudulently misrepresented the business's income such that the plaintiff was unaware that he was not receiving his appropriate share of the profits. 706 N.Y.S.2d at 408. The court summarily concluded that the plaintiff had "adequately stated a cause of action against the defendants that is sufficiently independent from his cause of action for breach of contract." *Id.* The decision, which is not binding on this Court in any event, is unpersuasive because it fails to explain how the fraud and breach of contract claims before it were *not* coextensive and because it conflicts with the decisions of other courts, *see, e.g., Bravia Capital Partners, Inc. v. Fike*, 2010 WL 3359470, *10 (S.D.N.Y. Aug. 25, 2010) (citing *Krantz v. Chateau Stores of Canada Ltd.*, 683 N.Y.S.2d 24 (App. Div. 1st Dep't 1998) and holding that claim for breach of profit

In sum, this Court concludes that an employer's statement about its ability to pay a potential employee's salary or its history of compensating employees is not collateral to a contractual agreement to pay the potential employee his agreed upon salary.

b. *Special Damages*

Plaintiff's fraud claim also fails to satisfy the third *Bridgestone* exception: special damages. Special damages in the *Bridgestone* context are damages that are caused by the defendant's misrepresentation and are unrecoverable as contract damages. *Bridgestone*, 98 F.3d at 20. In other words, a plaintiff may maintain both a fraud claim and a breach of contract claim if the injuries and damages caused by the fraud are distinct from the injuries and damages caused by the defendant's failure to perform the terms of the contract. *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225, 231 (S.D.N.Y. 2003). *See also, Arias-Zeballos v. Tan*, 2008 WL 833225, *9 (S.D.N.Y. Mar. 28, 2008) (granting summary judgment on fraud claim where "the opportunities [plaintiff] gave up in accepting that offer of employment are fully accounted for by her compensation under the alleged contract, and are not 'special damages' unrecoverable as contract damages."); *Jelks v. Citibank*, 2001 U.S. Dist. LEXIS 381, *10, *11-12 (S.D.N.Y. Jan. 22, 2001) (granting summary judgment on fraud claim where plaintiff failed to allege damages resulting from being induced away from prior position).

Here, Plaintiff fails to plead damages arising from McCabe's alleged fraud that are distinct from Plaintiff's claimed contract damages. Plaintiff seeks as fraud damages the amount of income he lost when he left Comerica to work for Defendants, (Complt. ¶62), and alleges that he was earning approximately $1 million per year at Comerica, (Cmplt. ¶ 12). Plaintiff seeks as contract damages both his unpaid salary and at least his minimum bonus, (Complt. ¶¶ 26, 27,

---

sharing agreement was not distinguishable from claim that defendant intentionally misstated its earnings so as to reduce the amount of money paid to plaintiff under the profit sharing agreement).

28), and alleges that the minimum bonus promised to him by McCabe was $1 million. (Opp. 7; Tr. 22:1-3). Thus, Plaintiff's claimed contract damages meet or exceed his claimed fraud damages. Because Plaintiff has failed to allege unique damages arising out of McCabe's alleged fraud, he has failed to allege special damages.

V.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' motion to dismiss Plaintiff's salary-based breach of contract claim is DENIED; and it is further

ORDERED that Defendants' motion to dismiss Plaintiff's bonus-based breach of contract claim is DENIED; and it is further

ORDERED that Defendants' motion to dismiss Plaintiff's fraud claim is GRANTED; and it is further

ORDERED that the parties submit a case management plan to the Court on or before July 25, 2012 ; and it is finally

ORDERED that counsel for all parties appear for an initial pretrial conference before the Court on August 2, 2012 at 10:30 AM in Courtroom 17B of the United States Courthouse for the Southern District of New York, 500 Pearl Street, New York, New York.

SO ORDERED.

Dated: July 6, 2012
       New York, New York

_____
ALISON J. NATHAN
United States District Court Judge